Good afternoon, Your Honors, and may it please the Court, my name is Sean Kennedy, and along with my co-counsel, Michael Lightfoot, I'm here to argue on behalf of the appellant, Carlos Avena. Your Honor, may I reserve three minutes for rebuttal? Manage your own time. Your Honor, this capital appeal focuses on the Supreme Court's two hallmark ineffective assistance cases, Chronic, which applies to actual or constructive denials of counsel at trial, and Strickland, of course, which applies to counsel who commits serious errors during trial. Excuse me, Mr. Kennedy, the Chronic issue is one of the uncertified appeals, right? Yes, the Court has ordered briefing on it, but it is uncertified. But I hope the Court will certify and decide it, because appointed counsel Marvin Part's performance in this death penalty trial was so abysmal, and I don't use that dramatic language lightly, that it really does rise to the level of Chronic, which dispenses with the showing of prejudice. However, if Strickland applies and is the test, Mr. Avena has demonstrated traditional Strickland prejudice, particularly at the penalty phase. Mitigation works, especially when you have a 19-year-old client who turned to drugs in response to terrible abuse by his alcoholic father. That's the issue I would like you to focus in on, if you would, and the two main pieces of evidence or types of evidence that were not presented, that you contend should have been presented, are the physical abuse and other abuse that he suffered as a child, and his use of PCP. And what I'm unsure about, and would like your take on, is how, in view of the record as a whole, does that demonstrate prejudice? Well, Your Honor, this is a teenage defendant who is involved in a serious crime, but he had a story to tell at trial, and that story wasn't told at all. When this went to hearing, we presented evidence that Mr. Avena had a terrible childhood, that he grew up struggling in poverty in Tijuana, and that his father, who was involved in criminal activities... But there was also aggravating evidence, and I guess what I'd like you to do is, if you can, weave together why you think, in view of the evidence of aggravation and the evidence about this crime, how it might have changed a juror's mind. Well, you know, there's a long line of U.S. Supreme Court cases, Williams, Wiggins, Rompilla, Porter, that also had aggravating murders. But the court held, in each of those cases, that it was ineffective not to marshal and And here, because Mr. Avena was so young, it's particularly important. The court in Eddings has said that social history or life history mitigation is particularly important for a teenage defendant. Eddings was, you know, 16, but the principle is the same, that very young people are... That's where mitigation is especially important. Mr. Kennedy, I think you know I have great empathy for the circumstances of this young man. And as you and I found out in Pinholster, though, the fact that you have a really tough defendant doesn't necessarily mean you pass the 2254D test. And that's what I'm struggling with in this case. I've read the briefs, I've read the record, I've seen the difficult circumstances that this defendant had. But the California Supreme Court appointed a referee. There was extensive hearings about all these mitigating factors. And after they finished doing that, they concluded that while, I guess in the penalty phase, they said it was clearly a violation of the first prong of Strickland and the second one they assumed a violation, but in each instance they decided that there was no showing of prejudice. They've got some very smart, capable judges who weighed what the referees found. I won't go through each one, of course the PCP issue and so on. In each case they explained in some detail why there was no prejudice under the standard of AEDPA. I know you don't like AEDPA, some of our colleagues are strongly opposed to AEDPA, but that's our law. We're stuck with that. And I struggle under Harrington and other cases of how we can, even given the validity of your argument about the difficult youth that Mr. Avena had, how do we get around that, Mr. Kennedy? I'm struggling with it. I don't see how, how do we meet the Richter standard? Well, Your Honor, we're all struggling with AEDPA, but I think there are three specific ways that the court could find an unreasonable application of Strickland. First, the California Supreme Court, the state court, made an unreasonable factual finding that Mr. Avena was not on PCP during the homicides. How is that an unreasonable factual finding? There was evidence both ways that he was and that he wasn't. So how could either choice be unreasonable? Well, there was a very small portion of evidence that he wasn't, and there was a large amount of evidence that he was. Mr. Avena But on the night, on the night in question, that was the difference, was it not? The Supreme Court said, yeah, you got this collateral evidence about his use and so on, but that there was no evidence that he was using it, except for Padua, I think said that, who was one of his co-defendants, and what he himself said. But other than that, was there any evidence that showed that he was using PCP on the night in question? Yes. Padua was his friend, and he is also the main prosecution witness for the DA at trial. And he said that, well, first, I'll just go through the evidence. Obviously, on the tape-recorded statement, he's not asked about PCP, but he does refer to being drunk. I was crazy. I was wrong that night. We didn't plan it that way. Victor Padua, who regularly smoked with Avena and his brother Arturo, said that when they picked Avena up, Mr. Avena, he was acting wild, and he looked and acted like he did on PCP. LAPD form 510, it says, narcotics use PCP, filled out by a police officer. And then two mental health experts testified that, based on the prior documented history of PCP use, and Mr. Avena's statements to the police and his behavior, that they believed that not only was he on PCP, but Dr. Orm Annaline testified that it was a major contributing factor to his participation in the offense. Vince Schiraldi, a social historian who testified, said that in all of his interviews, of all of the family and friends, that he didn't find anyone who didn't report that Avena had a serious PCP problem. And of course, there were records prepared by juvenile probation and CYA reflecting that particularly on the weekends, and this crime occurred on a Friday night. When you take that evidence against the contrary evidence, and I will concede that Officer Pickens thought he wasn't on PCP, but Officer Pickens is not a mental health professional. His opinion, I don't even understand how it's admissible and why it trumps two mental health crime county USC's, I think basically was the most involved with PCP users in the late 70s and the early 80s. Forgive me, maybe I'm misunderstanding this, but I thought that the California Supreme Court said that, you know, you had all these very qualified people, but the information they got was from people who had a real axe to grind, if you will. Certainly Mr. Avena, Mr. Padua, his mother. The other people all relied on him, and the experts, as I understand it, entirely relied on what he told them. Now, I'm sure he has some redeeming qualities, but the reality is he had every incentive to misrepresent what he was doing, and when the Supreme Court of California made his determination, it had all of that in mind, all the things you've talked about, Mr. Kennedy, and more that you have not yet talked about. And yet in weighing that, they concluded that there was no evidence that they could rely upon that said that on the night in question that he had used PCP. So what do we do with that under ADPA? Again, if it were just you and me, that's different. Sure. But we, I have to look at this under 2254D, and when you look at Richter, how do we, you know, fair-minded jurists obviously can't disagree, because those people did disagree, and they're very smart, capable people. Well, here we have a reasoned opinion, so, you know, I think we should look at the opinion, not Richter opining possible reasons. And I just want to say, Your Honor, I respect what the court is saying, but ADPA deference is an abdication. In Miller L., the Supreme Court, I mean, we had fact-finding from a state court finding that the prosecutors did not discriminate in selecting the jury. They made credibility findings and fact findings, just like the California Supreme Court did here, but the Supreme Court in Miller L. said, well, when you look at the record, it's shown up that that's an unreasonable fact-finding under 2254D2, and I think when you compare what I just talked about versus Officer Pickens, that it's in the same territory. That is what happens under 2254D, and the court in Miller L. found unreasonable fact-finding, and I think this court should, too. And I want to say, it's not... Is that your strongest argument, Mr. Kennedy, the PCP argument and your view that the Supreme Court of California made an unreasonable determination of facts? I think he was getting to three, and he only got to his first one. I have... But before we leave the first one, what... If we were to conclude that the California Supreme Court decision, the factual finding as to the lack of PCP use that evening was not unreasonable, how does that affect your argument on PCP mitigation evidence? Well, I think it affects it on both guilt phase and penalty phase, because the fact that he was impaired on PCP would definitely be a mitigating factor, and especially because it's not just that he's using drugs. It's that he didn't have his wits about him, and he fell prey to drugs because of the terrible home life that he had, so it would have allowed an integrated story of life history, terrible physical abuse and emotional abuse, drug use, grappling with it, trying to get better, trying to change, but remaining in a bad situation, and eventually... But wouldn't all that come in anyway, regardless of whether or not he was using that? Well, it didn't come in because, of course, Mr. Part did nothing. I'm just trying to... It seems to me there's the... And correct me if your theory is wrong, but if, in fact, that's not an unreasonable factual determination that takes the mitigating evidence off the table for that night, except for what he was drinking, except for the potential of PCP flashbacks, et cetera, it would not change the mitigating evidence problem, remove PCP entirely, is that right? Right, it would add to the mitigation value of PCP, because there seems to be a tendency in this case to cheaply distance, as if the fact that PCP use a week before doesn't matter, when we know that it does, from the experts. Okay, so you finished with number one, you better... Yes. Before your time runs, better get to two and three. Number two, moving from 2254 D2 to D1, the state court mischaracterized the record regarding the mitigation picture, and unreasonable applications, basically, it led to an unreasonable Strickland re-weight, is what I'm saying. And the reason I say that, your honors, is when a state court ignores evidence before it in making its decision, particularly significant evidence, that is an example of unreasonable... What specifically, in the Supreme Court's opinion, are you referring to? In In re Avena, the majority said that, well, the mitigation, that part didn't present was meager, I think was their choice, and said it was only three declarations, and they weren't especially personal. But that's not true. Well, they didn't say personal. They said that there were only three, and they were not particularly detailed, and in that regard, failed to portray him. So that's not really not personal. Well, but there was detailed evidence before the Court, Judge Graber, that the Petitioner presented at the evidentiary hearing, the testimony of a social worker who had interviewed all kinds of family and friends, and studied Mr. Avena's life and life history, the traditional social historian we see in death penalty cases. Mr. Kennedy, I'm confused about your response. I thought you were talking with Judge Graber about 2254-D-1 now, which is legal interpretation. Yes. And now it sounds like you're going back to 2, which is the factual determination. What am I missing? Well, this is my struggle with AEDPA, because sometimes the difference between D-1 and D-2 is not always that clear, but in a case like from this Court, Taylor v. Maddox, it was I mean, because they don't mention it? Yes. I thought that—I know the District Court specifically indicated, and cited in one of our cases, that you don't have to mention each of these factors. And, of course, the Supreme Court had a referee that went through everything. I mean, everything. If they read the report, what's the problem? They don't have to mention it in their opinion, do they? Well, I think that's right, that not every single thing needs to be ticked off. But when you say that the presentation is meager and cite to three declarations, which the justices of the California Supreme Court said weren't detailed, to me that betrays closing one's eyes or deliberately refusing to acknowledge that, in fact, the evidence before it, before the State court, was much greater than that. Well, then you're going back—forgive me if I'm missing this, but I think you're going back, then, to 2254d-2, right? You're back with the factual issue, not d-1, right? Well, it may be d-2. The reason I say d-1 is they find no Strickland prejudice based on— I think your argument on d-1 is that they committed legal error by not considering the evidence before them and reweighing. Exactly. That's exactly— Well, is it not that it's a factual error, but it's a legal error in reweighing? Is that your argument? Yes, it's refusing to apply all of the mitigating evidence in the Strickland reweigh when you're analyzing Strickland prejudice. And I just want to say, Mr. Schiraldi testified for over 100 pages. He got in-depth about the poverty, the abuse, the shame Mr. Avena felt when his father beat his mother and him, and into many particular explanations about how that affected Mr. Avena as a person. He didn't do well in school. He didn't understand the language. His father was beating him, and so at a young age, he turned to drugs and began to self-medicate. That is such a different picture than Marvin Part portrayed for the jury. And it does address the issues of aggravation as well, Your Honor, because much has been remarked, as it should be, about the jailhouse killing, but Marvin Part, contrary to Rompilla, did not investigate that aggravating evidence enough, because had he investigated, he would have learned that there were witnesses in the jail who saw what was portrayed as the first aggressor. Yeah, I'm not sure how far that particular thing gets you, because he was the first aggressor, but quite a period of time passed between his aggression and the killing. So it could be spun both ways, that he was angry and sort of lay in wait for a few days and then took his revenge. So that seems, just speaking for myself, less strong than the other issues you raise about background and drug use. Well, plus you have the fact that he was observed leaning over the guy that supposedly offended him, repeatedly stabbing him without resistance, and he clearly wasn't on PCP then, so far as we know, right? No, that's right. So, what I'd like to say is, I believe that issue of the timing, the way the evidence shook out in the actual trial because of the failure to investigate, was that a couple days before, another person had approached Mr. Avena, and because Mr. Part didn't investigate, he was stuck with that, and your Honor is exactly right. Had he investigated, I think he would have learned that much closer in time, right before, it was this particular victim, who was portrayed as the victim, that was a different aggressor, which is why he was wearing a towel around his waist. Now he was not on PCP, your Honor, that's right, but it doesn't have to be, I'd like to stress on the penalty phase, imperfect self-defense could have helped Mr. Avena. It doesn't have to be a full-blown, perfect self-defense case. I get that, but I mean, there were, I think, several officers who observed him, with the victim on the floor, repeatedly stabbing him to death. He clearly wasn't involved in self-defense at that point, at least arguably when the Supreme Court looked at that, they had every reason, as in quotes, fair-minded jurists, to consider this was no act of self-defense, plus with the towel thing we were talking about earlier, that they understood that had some meaning as well, but the reality is he's not on PCP, and he's stabbing this guy to death. That's not self-defense, at least in some people's minds. Right, and if there had been a full picture, and the jury could consider all of those issues, we may have a different argument, but the jury really had nothing. Let's say, and I, of course, read your brief, let's say that all the other things that point to self-defense are in there, Mr. Kennedy, you're still faced with the fact that the California Supreme Court looked at the totality of this evidence as considered through the referee as well, and concluded that, as is their right, that they did not find self-defense here. They thought it was cold-blooded murder, and that's the way they ruled, and with AEDPA, we're stuck with what they do, unless it's so unreasonable that basically nobody could disagree with how unreasonable it is. And that is why I argue that the mischaracterizing the mitigation picture creates a D1 violation, because the mitigation was strong, and as I said, they ignored that, and I just would like to stress on the mitigation side, the life history, the expert testimony is not fairly portrayed. There's some notion that the experts don't really know if he's on PCP, but one of the experts testified that he was sure, based on the conduct and the history, that PCP was involved, and the second expert, in addition to Dr. Rosenthal, Dr. Ormeline, made all kinds of comments. He thought it was a major contributor, that it affected Avena's ability to appreciate the criminality of his conduct that night, that Avena would have a difficult time conforming his conduct to the requirements of the law, and it would interfere with his ability to intend to kill, that type of on-the-spot type of intent. How does the killing in jail, in the jail, to be factored into what occurred on the night when he killed the other two people? How are we to weigh what the Supreme Court looked at? We have two totally different situations, one where I know your argument is he was on PCP. The other one, he clearly was not on PCP. The other one, he randomly killed these two people, he doesn't deny that, who had done virtually nothing to him. The other one, he claims self-defense, and yet he killed this guy. It's all part of a package, is it not? The Supreme Court's entitled to consider the totality of what he did overall, clearly in one where there was not even a chance of PCP. In the Strickland Re-way, that is right, the Supreme Court has to consider mitigation and aggravation, but as in Rompilla, when you don't investigate aggravation, you cut off ways to minimize and mitigate what is terrible, and as your Honor speaks about it, you know, I acknowledge it, it sounds bad, but with proper investigation, as we saw from the second There was a story to be told about that jail killing, that even if not a perfect defense, it mitigated it, and the jury did not hear that because the lawyer did nothing, and I think in the end, it's an unreasonable determination of Strickland prejudice, and it's particularly In other words, a re-reading of the law from your perspective, that's where you get to the D1 concept? Yes, because in finding no Strickland prejudice, the court had to close itself off to all kinds of evidence that was before it, and then criticize the presentation as meager when the reference order itself severely restricted the evidence that was allowed to be presented. And finally, I just want to say my third path to unreasonableness, this is an unusual case because the Supreme Court doesn't just apply Strickland prejudice, which is a reasonable probability of a different outcome at trial, they also repeatedly cite Lockhart v. Fretwell, which has a different prejudice standard in a very particular context, and Fretwell says that to prove prejudice, you can't just look at outcome determination, which sounds like Strickland, but you must also look at the reliability of the verdict and the fundamental fairness of the trial, to the extent that the conflating Fretwell prejudice onto Strickland prejudice, and that's done numerous times, created a higher standard for Mr. Avena to show Strickland prejudice, that is contrary to Strickland, and an unreasonable application of  I'd like to have some rebuttals. Thank you, counsel. May it please the Court, Deputy Attorney General Michael Katz for respondent. I'm going to begin, if I may, by responding to some of the things Mr. Kennedy just said. First of all, regarding the Lockhart v. Fretwell discussion that the State Supreme Court had, it wasn't conflating. It was discussing two different standards, and if you look at what a different panel of this Court said around the same time of that State Supreme Court decision, it, too, struggled with the meaning of Lockhart v. Fretwell. The parties actually discussed this in prior briefs, not before the Court, and, you know, I pointed out then that this Court did a similar thing with Lockhart v. Fretwell. So it wasn't as if the State Supreme Court did something strange. It wasn't until later that the U.S. Supreme Court clarified Fretwell a little bit more that both this Court and the State Supreme Court dropped it in this context. But it wasn't conflating, and it wasn't anything different from what this Court did. Well, it may have conflated. It may be compatible with what we were doing, but they may have conflated the standards. True? I don't think that's right, Your Honor. I think they analyzed them separately as alternatives. But we may just disagree about whether that happened. Regarding whether the State court ignored the evidence at the State evidentiary hearing, I discussed this in more detail in my supplemental brief before this Court. But that's not an — I think Petitioner is incorrect in his characterization of that. What happened was — The crux of the question is whether the conclusion by the State Supreme Court of no prejudice was an unreasonable application of Strickland. And it would be helpful to me to have you go directly to that question, because it seems quite obvious that this lawyer did a terrible job and presented nothing in mitigation. And that was a fact that the prosecutor seized on in argument repeatedly. There's no mitigation. There just isn't. I'm not sure if that's an exact quote, but that's the gist of it. And so the abuses from the father, the PCP usage, why wouldn't that have made a difference? Well, Your Honor, the reason it would have made a difference is because the aggravating evidence was so much more powerful than any of the mitigating evidence he could have presented. So specifically, this Court had said on Bonk and in Mayfield that juries are not positively influenced by evidence that the defendant voluntarily became intoxicated by using drugs. Well, he didn't voluntarily get beaten over and over by his father and defended his mother. I mean, that's only a piece of it here. To mitigating evidence, Your Honor, but I would like to have – compare this case to a 2015 opinion from a different panel of this Court, Medina v. Chappell, which I discussed in my brief. And in that case, which did not even involve a DPA deference, a different panel of this Court stated that the mitigating evidence there, although indeed mitigating, would not have convinced a jury in a penalty phase to come out the other way. The evidence in Medina was stronger in mitigation than the evidence here. In what respect? Well, in Medina, the evidence was that Mr. Medina had a personality disorder. His brother was a schizophrenic, had committed suicide. Four of Mr. Medina's extended family members had schizophrenia. Mr. Medina was a young child, fell on a concrete floor, hit his head, and had a scar. Also was a young child. He allowed his cousins to take target practice on his head with BB guns. Even – But that's a very different kind of case, though, because that deals with, you know, organic brain damage or mental illness. And here, what we have is something quite different, which is what led a person potentially to become violent by being the recipient of violence. And there was evidence that his family, other than his father, considered him to be a good person and that he was helpful to them. And there was a lot here, it seems to me. Your Honor, the evidence in Medina also included evidence that he was abused by his family combined with everything else I said, and that he was whipped by nuns. So it isn't a different – Is that unusual? I don't know, Your Honor. Oh, dear. I'm not qualified to say. But – But let me – Yes. Along those lines, that's the struggle we always have in these cases, because Wiggins and all of those cases say this is classic mitigation evidence. And the response generally is the one you gave here, well, not necessarily. People – drug use doesn't really help you with juries. But the Supreme Court says – seems to say that that's the evidence that should be – that's classic mitigation evidence. And here, I think the struggle I have, anyway, is the fact that you didn't put on anything. This defendant had no chance of not getting a death penalty verdict when you don't put on a single bit of mitigating evidence. Well, Your Honor, to that I would just say that the Cruxborough argument is not that – is not on the performance problem. Right. No, I understand. It's on prejudice. And so it's totally understandable that this Court maybe doesn't – yes, Your Honor. But I think just picking up where the Chief Judge left off, but to the same point, where there is some mitigating evidence and a little bit more, it's harder to see prejudice. Where there is no mitigating evidence, and that's the prosecutor's very argument to the jury, then it seems more plausible that the jury would have something to hang its collective sort of moral hat on if there had been some of these issues developed. Your Honor, I would just say that, of course, it's not mitigating evidence in isolation. I've talked a bit about why the mitigating evidence wasn't convincing here. But it's also comparing it to the aggravating evidence. That's part of the analysis that you have to do every time. The aggravating evidence – And it was primarily that he had killed more than one person and with great violence. Well, I think that's a very summary way of stating it. I mean, he killed two people for really no good reason other than he wanted a car, which it seemed like he could have gotten regardless of whether he killed them. Then when the police – before they were able to arrest him, he tried to kill two police officers. He also shot into another car before he shot at the police of a woman who was stopped at a stoplight. He could have easily killed her, but, you know, luck would have it he did not. He shot at her at the driver's side. Then, even after he's arrested for all of this and he's charged with capital murder – he knows he's charged with capital murder – he kills again. He kills an inmate in prison. So it's not just a question of adding up the numbers. It's – you know, there could have been – I think the State supreme court said this in one of its published opinions – there could have been five dead people. But, sir, I mean, you had strong aggravating evidence, no question. But here you have the – his attorney doesn't even put him in street clothes. He comes in in a prisoner's uniform every day. You hear all of this aggravating evidence and no defense whatsoever, and his attorney is basically arguing, well, he's a bad person, but you shouldn't oppose a death penalty for a bunch of reasons. And the prosecutor says, there's no mitigating evidence, and the jury's instructed to weigh the mitigating evidence against the aggravating evidence. That's the struggle I – you know, I'm just expressing – I'm not disagreeing with your analysis. I'm just expressing it. When there's no effort to put on mitigation evidence, it does make the case a lot different to me than when there's some, as Judge Graber says, and you're adding to it. Well, I also respect what you're saying, Your Honor. I do, and I don't disagree that that's – that, you know, that's a – You weren't defending the case. You weren't prosecuting the case. You were – you know, you have to defend what happened. I appreciate that. But what I would say is that if – the reality was that given this evidence, any reasonable juror would think he was a bad person. So, you know, there are countless ways for a good – for a lawyer to try a case. I'm not saying that Mr. Park did a good job. But the idea of saying, well, he's a bad person, but still he doesn't deserve a death penalty, is not a crazy thing to do. It's not even a – But it can be. I mean, it depends on the circumstances in which you make that statement and what else is happening in the trial. But if I may ask a slightly different question on another topic. Yes, Your Honor. We have briefing on uncertified issues here, and with – if, hypothetically, we were to agree with the petitioner that there was an inadequate Strickland analysis at the penalty phase, would we have to reach one way or another whether to certify the other issues? Or would they be just irrelevant? I don't think I understand your question, Your Honor. Well, my question is if we were to reverse and remand for a different penalty hearing on the certified issue, would we have to think at all about the uncertified issues? Well, if you were to reverse and remand on a certified issue, you wouldn't have to – That's my question. You would not have to think about whether to certify them or not. That's right. That's my question to you. That's right. Okay. Conversely, what about the chronic issue? Do you mind arguing that? Yes, Your Honor. So petitioner – I know we haven't certified it, but we're deciding whether to. So your views would be important. I understand. So in the supplemental briefing, Petitioner takes issue with our analysis of chronic and points out that if some – his argument is if counsel is really bad at each stage of the proceedings, that could be chronic. And if I mischaracterize that inadvertently, then I can be corrected by Petitioner's counsel. But that's my understanding of it. The problem with that is that if you look at the beginning of Strickland and it tells you before defining the test for ineffectiveness what ineffectiveness is in a general sense, it's virtually identical to what Petitioner says chronic should be. The Strickland court said that when counsel's conduct is so – has so undermined the proper functioning of the adversarial process that the trial court cannot rely on it as a just result, that's ineffectiveness. That's what Strickland said. It didn't say that's chronic. Chronic was a different opinion. So there must be some difference between performing so poorly at every stage of the proceedings that you're ineffective and chronic. And so this doesn't fall into any of the chronic cases as we pointed out in our supplemental brief. I hate to interrupt too much on the chronic argument, but I want to just ask one thing that's a correlative with respect to the prejudice issue. Do you know of any cases in our court or from the Supreme Court where a lawyer presented no mitigating evidence at all where prejudice was not found? Well, I'm trying to think of whether in Strickland's case the trial counsel presented mitigating evidence. I don't remember. I know what he did in terms of preparation, which was similar to what Mr. Park did. And I just don't remember, Your Honor, whether what the mitigating evidence was in Strickland, if any. I – this is part of what troubles me about this. You get all these cases where somebody does a little bit of this, and like in Pinholster we had like six hours' worth of preparation and so on. You can add that all up. In the penalty phase here, the California Supreme Court just assumed without deciding that the first prong of Strickland was not satisfied. I assume you don't dispute that, right? That the first prong of Strickland clearly was not satisfied here? Penalty phase. Well, we actually do dispute it. Again, we're not saying he should do it. You dispute the deficiency of performance at the penalty phase? I do, Your Honor, and if I could explain why. So we were mistaken in our brief when we said that the look-through doctrine applies. It does not because look-through only applies to the exact same claim. So we don't have the exact same claim here because Petitioner added thousands of pages to the prong two aspect. And by the way, this is to our detriment that we asserted that look-through  Can you just directly answer why you think his performance wasn't woefully deficient? It's not that my personal opinion about it. What I wanted to say is you asked whether we disputed it. And I just want to say this. Under Richter, what you're supposed to do is look at all the possible arguments. Except the California court said they would assume it without deciding it. So they haven't decided it one way or another. There's nothing for us to defer to. They just haven't gone there at all. So that's why I'm asking you. It just seems obvious that there was deficient performance, and that's probably why they didn't say anything about it. I understand that, Your Honor. And again, the crux of our argument is on the second. But we're both asking the same thing. Are you conceding or not conceding that the first prong of Strickland was not met in the penalty phase of this trial? I'm not conceding it. If I can just finish why we're not conceding it. So if we just had the first State habeas ruling, then we would concede it. But the point is that there was a second decision that was summary denial. It was not the published opinion. And so the question then comes up, well, can we just look at the published opinion on first State habeas to determine what the State Supreme Court would have meant on second State habeas? And, Justice Graber, if you could, then your conclusion would be correct, that the ---- But just factually, I don't understand how you can argue that there isn't deficient performance. Well, factually, it's a different issue about whether we're conceding it as a matter of law. And what I would say is that Richter ---- Can you tell me as a matter of fact whether you conceded it, regardless of the legal analysis? Yes. Because when you compare it to Strickland, Strickland was a 1984 case. And this was a 1981 case. And the issue isn't whether, you know, we think that he did a good job. The issue is, did he perform competently, given the law at the time? So Petitioners, counsel in Strickland ---- And your answer to that is yes or no in this case. Yes. Yes, he did. Because you ---- Yes. Yes, he performed deficiently below the standard of care. No. At the time. Yes, he performed competently within the meaning of Strickland because, Your Honor, if you look at what Strickland's counsel did and you compare it to what Mr. Part did, it's difficult to distinguish. I would ask the Court to keep in mind that Mr. Part stated when ---- outside the jury's presence, when penalty phase deliberations began, that he had or he implied at least that he had spoken to Petitioner's family members. He was more specific in the State of the Jury hearing transcript about what he had done, and Petitioner's habeas counsel testified about what Mr. Part and Mr. Part's investigator told him they had done. So if you compare that to what Mr. Strickland's counsel did, which was not deficient So you're saying, and we had the same issue in Pinholster, that you judge it by the law that existed at the time, not what happened later on, and now things change with respect to capital cases. So your point is that based on professional conduct requirements and capital cases in 1981, that as bad as this guy was, he didn't violate the first prong of Strickland.  It's exactly my point, Your Honor. But we have all sorts of cases around that period of time where we found deficient performance in not putting on any mitigating evidence. Sullivan v. Stewart, Carragher v. Stewart, you go on and on. If you don't put on mitigating evidence, that's the deficient performance on penalty phase. I understand. It may not be prejudice, I grant you that, but it's deficient performance. When you ask the jury or the judge at the time, which in Arizona was the judge, to weigh mitigating and aggravating, and if you don't have any mitigating, there's only one possible outcome. Your Honor, I do understand that that's the court's position and I respect it. I'm just saying, we have cases. So when you say that's comported with the standards of the time, there were the ABA standards that applied at the time, and all of them required investigation, and I think there's nothing that would say don't put on any mitigating evidence in a capital case. I understand that this court has cases that say that, and I respect that. I would just say that the Supreme Court reiterated in Bobby v. Van Hook that the ABA standards are not governing standards. And the Supreme Court has said several times, I think, that circuit court precedent shouldn't be used to refine or sharpen. Fair enough. Supreme Court precedent. So I think there's just a disagreement. But you're talking about the standards of the time, and I'm talking about the cases that we have applied. And I agree with you. I mean, we're talking about clearly established Supreme Court precedent in terms of AEDPA, but, boy, you have a tough battle on saying he was competent or not the penalty phase, I think. What I would say, to put it a little bit more specifically, if I may, is that the California Supreme Court could have reasonably denied the claim on either or both prongs of Strickland. So it isn't a question about under novel review what a court should think or even what I think personally. It's just whether, if you look at Richter. Well, look at Bean v. Calderon, which is a California case, same sort of situation. I mean, I can go down all the cases that I can recall, and when you don't put on any mitigating evidence, I don't think there's been a single court that hasn't found either Strickland, a violation of Strickland at number one or potentially number two. I think your argument on number two is this stuff was so bad that there was no amount of mitigation that would have mattered. And that's a point. But the Croxper argument is on two. And before I go on to another topic, if I may, I just want to add that if this court wants to allow a petitioner to file a supplemental brief on whether the AEDPA standard under Richter applies to prong one, we would have no objection. It's an issue that we thought about in preparing for this case. It wasn't done to try and disadvantage anybody. In fact, we were disadvantaged by arguing it the way that we did in our briefs. So if I may go back to something Mr. Kennedy said. Regarding the failure of the State Supreme Court to consider additional evidence that was in the record in the state evidentiary hearing. This is also discussed in our supplemental brief in more detail than I can go into now. But the State court set or ordered a reference hearing on a very specific issue, which involved diminished capacity or sub-issues of diminished capacity. And then it is true that Petitioner persuaded the State referee to listen to evidence that had nothing to do with that issue. But then what happens is, so was the State Supreme Court required then to listen to this evidence that said it didn't need because it didn't – Petitioner previously didn't meet the State standards for a State hearing on that issue? I don't think there's anything in the cases Petitioner cites or any precedent that says the State court has to do that. And the State court then – so when the State court said the evidence was meager, it was being accurate because it was not required to look at evidence that it told Petitioner, we don't want to hear because you haven't met the State requirements, not because of any kind of due process problem, but you haven't met the State requirements for justifying a State hearing. And the Petitioner came back with thousands of pages of evidence, which he later gave to this Court. He gave it to the State court first in 1999, and the State court looked at all that evidence and rejected it. So the State court didn't do anything improper when, on first State habeas, it didn't consider that. Regarding the diminished capacity argument, I want to cite a couple quick facts, if I may, which show that the State court did not act unreasonably. Officer Pickens specifically asked Petitioner, did he use PCP that night, and Petitioner said he did not. That's at – in the excerpts of record at pages 3355 to 3357. It's not just Officer Pickens's personal opinion. Petitioner specifically denied it according to that testimony. Victor Padua testified, the State evidentiary hearing, that he did not actually get a good look at Petitioner's testimony the night of the crimes. And that's in the excerpts of record at page 1508. So the reality is, Victor Padua, you know, common sense tells us that, yes, he was a prosecution witness, but he was Petitioner's friend. And, you know, obviously, he felt bad. I mean, that's a reasonable inference from the record. He felt bad that he cooperated with the prosecution, and he wanted to help Petitioner at the State hearing as a recanting witness. And so his recantation was unbelievable, because he even admitted at the State hearing that he didn't see Petitioner's face that night. So just to sum up, if I may, the issue, of course, is whether a fair-minded juror, a jurist, could agree with the California Supreme Court's  that Petitioner did not prove, in effect, misunderstood Brooklyn. If Petitioner fails under either prong of the analysis, Petitioner loses. And the crux of our argument is the second prong. We don't concede prong one, but we also don't think that that's where we should be spending most of the effort. It's really prong two. And I gather your — your perspective is that even though no mitigating evidence was arguably put on, that the totality of the circumstances and what happened was so awful that it wouldn't matter what mitigating evidence was put on. It wouldn't have made any difference. That's part of it, Your Honor. I would also urge this Court, again, to compare it to Medina v. Chappelle in 2015, where if you look at the mitigating evidence there, which was insufficient to make a difference, and you compare that to the why, it's not — it's not correct to say that no fair-minded jurist could agree with the State Court. But in that one, in Medina, as I recall, there was some mitigating evidence. What I struggle with here is, you know, I think there probably was a little bit, but hardly any at all. And that's what I struggle with. Can you rely on the awfulness of the crimes collectively here to say, you know, no matter what, no jury would have possibly given this guy a break? It's not only whether you could do that, and I think one could, it's whether the State supreme court unreasonably denied relief in this case. Right. Right. Thank you very much. Thank you. Thank you. I just want to say on the Lockhart v. Fretwell issue, it's not just me. Three justices of the California Supreme Court said it was confusing and problematic to introduce that into the case. And the next thing that I'd like to say is, Pickens, who is the only evidence that he was not on PCP, and Mr. Katz said he testified that he asked and Avena said no, that's true. It's not on the tape. It never appeared in the trial, but he did testify on habeas that. But the California Supreme Court wrote, we note that the police did not ask petitioner whether he was intoxicated on PCP on either the night of the crimes or at the time of the interrogation. So that seems to be contrary to Officer Pickens' highly questionable testimony on this issue. What happened here is really worse than a mistake. A counsel is conceding guilt on capital offenses and then goes into penalty and offers nothing. Your Honors, I was a public defender almost 25 years and I made every mistake in the book and I watched panel lawyers make a mistake. But that action was not a mistake. Conceding your client's guilt and putting on no mitigation for a 19-year-old is just about the worst thing a lawyer can do to a client on trial for his life. And the prejudice analysis I hope this Court will really take a look at because epidefference, it's deferential, but it's not abdicating the core Supreme Court standards. Williams v. Taylor had terrible aggravation. But... Rompilla too, Your Honor. You know, Rompilla, Williams, that all occurred after this. We can't consider that, can we, or can we? You can absolutely because those are part of the Strickland standard. I want to just say... Wait, wait, wait. Didn't we learn from Penholster? That's the very argument I made was all these things, Williams and Rompilla, all those things made it more difficult and so on, and the Supreme Court said, No, you've got to consider what the law was at the time. And at the time, those cases didn't exist at all. Penholster did not overrule the Supreme Court's Strickland cases. It said that the new federal evidence couldn't be used to evaluate the reasonableness. That was part of it. The second part was the one I was just talking about. You have to look at the law at the time, not as refined by later cases. That was the second part of the ruling. No, I respectfully disagree. Those cases are interpreting clearly established federal law as enunciated by the Supreme Court. And the fact that they came later doesn't change the fact that the claim itself is based on Strickland and Chronic. And there is definitely a basis to find here. Mr. Katz talked about Medina. Mr. Penholster is not antisocial. Even a state's own expert in federal court said he wasn't antisocial. He was a troubled, decent young man who fell prey to drugs because of the terrible abuse that he suffered in the home. Humanizing a 19-year-old client is essential. And it wasn't done here, and it wasn't because it wasn't being done. We had two Strickland experts who said it was done all the time. It was done because Mr. Part has a fundamental aversion to mitigation. He mocked it. He made fun of it in the depositions. And he said his sympathy lied with the victim. The jury picked up on that. There should be a new trial where he has someone actually trying to humanize him and contextualize his participation in this offense. Thank you, counsel. Thank you both for your arguments and briefing. The case just argued will be submitted for decision and will be in recess for the afternoon. Thank you, Your Honors.
judges: Thomas, Graber, M. Smith